FILED

**April 21, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 7:15 AM**



# IN THE TENNESSEE COURT OF WORKERS' COMPENSATION CLAIMS

MARK D. GREEN

        Employee,

v.

SUMPTER SOLUTIONS, LLC
BRENTWOOD SERVICES
ADMINISTRATORS, INC.

        Employer/Carrier,

DOCKET NO. 2014-05-00470
STATE FILE NO. 65639-2014
DATE OF INJURY: July 24, 2014
JUDGE BAKER

## ORDER ON EXPEDITED HEARING

THIS CAUSE came before the Court upon the Request for Expedited Hearing filed on January 23, 2015, by Mark D. Green pursuant to Tennessee Code Annotated section 50-6-239(d)(1). Although Mr. Green requested that the Court convene an evidentiary hearing, upon further discussion Mr. Green and attorney Catheryne Grant, counsel for Sumpter Solutions, LLC (Sumpter) and Brentwood Services (Brentwood) consented to having the Court issue an interlocutory order based on a review of the file pursuant to Rule 0800-02-21-.14(1)(c) of the Tennessee Comprehensive Rules and Regulations. Upon review of Mr. Green's Request for Expedited Hearing and the entirety of the court file, and in consideration of the applicable law, the Court finds that it needs no additional information to decide Mr. Green's request for medical benefits and enters the following order denying same.

### Issues

Whether Sumpter should be required to provide Mr. Green additional medical benefits for his alleged work-related injury.

### Evidence Submitted

The Court reviewed the entire case file in reaching its decision. Specifically, the Court reviewed and relied upon the following:

A.  Medical records of Dr. Chad Smalley
B.  Medical report of Dr. William C. Nemeth dated October 6, 2014
C.  C-42 Choice of Physician Form

1

D. Medical records of Dr. David Martin
E. Medical records of Dr. Guy Fain
F. Affidavit of Joseph Sumpter
G. Affidavit of Eric Rogers
H. Affidavit of Clay Binkley
I. Affidavit of Mark Green dated January 6, 2015
J. Correspondence from Dr. Smalley dated February 25, 2015
K. Affidavit of Mark Green dated March 10, 2015
L. Notice of Denial of Claim for Compensation
M. Medical Report of Dr. William C. Nemeth dated November 7, 2014
N. First Report of Injury
O. MRI Report
P. Affidavit of Alyssa Sumpter
Q. Correspondence from Dr. Smalley bearing a November 7, 2014 fax transmission date.

**History of Claim**

The Court derives the claim history provided below from the claim file:

On January 29, 2013, Mr. Green suffered an on-the-job injury. Sumpter provided treatment with Dr. David Martin at Sewanee Family Practice. (Exh. K). The note from Mr. Green's first appointment with Dr. Martin includes the following description of the accident:

> He is here for workmans [sic] comp he injured his R knee 1/29/2013 when he fell while carrying a jackhammer. He landed directly on his knee cap on a small tool box containing drill bits. He didnt [sic] break the skin but it did bruise. He used ibuprofen and kept it elevated that weekend and it improved. He has been doing a lot flooring work past 30 days with knee pads and his knee has gotten progressively swollen and painful again.

Dr. Martin diagnosed joint pain, a knee contusion, and prepatellar bursitis. (Exh. D).

On July 24, 2014, Mr. Green suffered another injury to the same knee while working. The First Report of Injury states that the injury occurred when a rock got caught between the knee pad and his knee while Mr. Green was crawling. (Exh. N).

Mr. Green went to the emergency room at Southern Tennessee Medical Center on July 30, 2014, when his knee began to swell. At the emergency room, the providers aspirated and x-rayed Mr. Green's knee and injected it with cortisone. (Exh. E). The attending physician, Dr. Guy Fain, diagnosed osteoarthritis and an abrasion. (Exh. E). He took Mr. Green off work pending evaluation and release by a workers' compensation physician. (Exh. E).

Sumpter provided Mr. Green a panel of physicians and he selected Dr. Chad Smalley as the authorized treating physician. (Exh. C). The medical records indicate that Mr. Green told Dr.

2

Smalley that he injured his right knee while crawling under a house to perform some plumbing. (Exh. C). He described the knee pain as "achy, burning and sharp" and rated the pain as an eight (8) on a scale of one (1) to ten (10). (Exh. C). Mr. Green also described experiencing weakness and radiation into his upper leg as well as "burning, catching, cracking, gait abnormality or limp, grinding, locking, loss of motion popping and stiffness and instability." (Exh. C). Mr. Green additionally reported some discharge in the area around his knee. (Exh. C). Dr. Smalley issued restrictions prohibiting Mr. Green from working on his knees and from twisting, bending, squatting and kneeling. (Exh. C). He also ordered an MRI. (Exh. C).

On August 14, 2014, Mr. Green underwent an MRI. (Exh. O). The MRI revealed no ligament damage or meniscal tears. (Exh. O). The MRI did, however, reveal "Focal grade 2-4 medial condyle chondromalacia" and a "Large area of grade 4 medial chondromalacia patella." (Exh. O).

Mr. Green returned to Dr. Smalley on August 27, 2014. (Exh. C). Dr. Smalley diagnosed chondromalacia in the right patella and right knee pain. (Exh. C). He ordered an injection and continued Mr. Green's workplace restrictions. (Exh. C). Mr. Green received the injection but his symptoms did not improve.

At a visit on October 1, 2014, Dr. Smalley wrote the following in the "Plan" section of his treatment notes: "We discussed that his symptoms have continued to be recalcitrant to conservative treatment. He is a candidate for an arthroscopy with shaving chondroplasty and microfracture technique. He understands that the arthroscopic procedure will not fix the arthritis or remove all arthritis from the knee, and that likely the arthritic degeneration will continue over time with continued symptoms and possibly even additional procedures necessary, even a total knee arthroplasty in the future." (Exh. C).

On October 6, 2014, Sumpter obtained a peer review report from Dr. William C. Nemeth concerning Mr. Green's need for knee surgery. (Exh. B). In answering the question of whether a causal relationship existed between Mr. Green's July 24, 2014 injury and the request for "right knee arthroscopy with shaving chondroplasty with microfacture technique," Dr. Nemeth wrote:

> Absolutely not, the claimant has a history of right knee pain due to prepatellar bursitis. The changes in the medial facet of the patella in this claimant are due to chronic loading conditions from the biomechanics of the patellofemoral joint and have nothing to do with this alleged workplace injury itself. The proclivity toward degenerative joint disease plus the biomechanics of the joint have contributed to this lesion in the medial patellar facet. Abrasion chondroplasty or microfracture is not indicated in this claim as it would relate to any workplace injury itself. The alleged workplace injury likely caused exacerbation of preexisting disease which was already well document in this claimant. It did not cause any structural changes to the patellofemoral joint in this claim. That said, requests for knee arthroscopy with shaving chondroplasty and microfracture does not relate to this workplace injury itself.

3

(Exh. B).

On October 8, 2014, Sumpter faxed a copy of Dr. Nemeth's report to Dr. Smalley along with a questionnaire asking whether Dr. Smalley agreed with Dr. Nemeth's opinion. (Exh. Q). Dr. Smalley checked "Yes" on the questionnaire and faxed it back to Sumpter. (Exh. Q).

On October 29, 2014, Mr. Green returned to Dr. Smalley for follow-up treatment. In the treatment notes, Dr. Smalley again stated that "…an arthroscopy with shaving chondroplasty and microfracture technique…" would benefit Mr. Green. (Exh. C). The treatment notes also contained the following: "Although there are findings that would suggest an underlying chronic state of chondromalacia we do believe there to be acute symptoms that are causally related to the reported injury at work. We do feel an arthroscopic procedure could address these symptoms and hopefully get MR. [sic] Green back to his baseline of function." (Exh. C).

Upon receiving this medical note, Sumpter forwarded it to Dr. Nemeth for review. On November 7, 2014, Dr. Nemeth issued a second report. (Exh. M). In responding to the question of whether Dr. Smalley's October 29, 2014 office note changed his previous opinion, Dr. Nemeth wrote:

> No, the claimant's acute injury was a prepatellar bursitis of the right knee. That has been treated successfully and resolved. The additional problems with the knee are due to chronic degenerative changes in the patellofemoral joint and joint in general and have nothing to do with this mechanism of injury itself. That said, any arthroscopic chondroplasty or microfracture procedure done for this joint relates to the previous preexisting degenerative arthritis of the knee which does not relate to the acute prepatellar bursitis which was successfully treated in this claimaint.

(Exh. M).

On November 26, 2014, Mr. Green visited Dr. Smalley again. The treatment notes from this visit stated "Although there are findings that would suggest an underlying chronic state of chondromalacia we do believe there to be acute symptoms that are causally related to the reported injury at work. We do feel an arthroscopic procedure could address these symptoms and hopefully get Mr. Green back to his baseline of function." (Exh. C).

On January 28, 2015, Sumpter sent Dr. Smalley a letter seeking clarification on the causal relationship between Mr. Green's need for surgery and the July 24, 2014 workplace accident. (Exh. J). On February 25, 2015, Dr. Smalley provided the following response:

4

Considering all of the foregoing, can you please advise if the arthroscopic surgery you are recommending is related to the July 24, 2014 incident?

YES _____ NO ___✓___

Explanation, if necessary.

AS INDICATED IN OUR NOTES, I BELIEVE THE PATIENT'S REPORTED SYMPTOMS TO BE RELATED TO AN EXACERBATION OF A PRE-EXISTING DEGENERATIVE CONDITION (ie: PATELLOFEMORAL CHONDROMALACIA) ACCORDING TO THE INCLUDED TN WC LAW DEFINITIONAL STANDARDS

We kindly request that you sign and date your response in order to comply with the Court's evidentiary requirements. Please advise if you require pre-payment for your services in responding to this letter, and we will attend to the same.

INCLUDED, THE "CHRONIC" DEGENERATIVE CHANGES LIKELY CONTRIBUTE TO > 50% OF THE PATIENT'S DESCRIBED SYMPTOMS, EVEN THOUGH THERE HAS BEEN AN OBVIOUS EXACERBATION PER THE PATIENT'S REPORT AT THE TIME OF THE ALLEGED 7/24/14. ACCORDINGLY, THE ARTHROSCOPIC SURGERY WOULD BE INDICATED TO ADDRESS THE DEGENERATIVE CHONDRO-MALACIA, BUT NOT TO ADDRESS SYMPTOMS RELATED TO THE ACUTE EXACERBATION (<50%).

Very truly yours,

Catherine J. Granton
For the Firm

CI.G/ld

_____     _____
Chad Smalley, MD                      Date    2/25/15

(Exh. J). On March 2, 2015, Sumpter issued a notice denying Mr. Green's claim on the ground of compensability. (Exh. L).

### Employee's Contentions

Mr. Green argues that he suffered a compensable injury to this right knee on July 24, 2014. Essentially, Mr. Green claims that the July 24, 2014 injury constituted a progression or reaggravation of the previous right knee injury he suffered on January 29, 2013. In his affidavit, Mr. Green stated that he continued to suffer pain since January 29, 2013, and missed time off from work due to the pain and swelling in his knee. Mr. Green further states that he suffered no knee pain prior to January 29, 2013. He also claims that much of the pain and swelling from the 2013 injury had lessened, or come under control, prior to the July 24, 2014 incident. Mr. Green requests an order requiring Sumpter to pay the cost of the surgery necessary to correct his knee condition.

### Employer's Contentions

Sumpter argues that the current need for treatment did not arise from his July 24, 2014 accident. Sumpter relies upon the opinion of the authorized treating physician, Dr. Smalley, in

5

support of its position that the Court should not order it to pay for Mr. Green's knee surgery.

**Findings of Fact and Conclusions of Law**

*Standard Applied*

"The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer." Tenn. Code Ann. 50-6-116 (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that "[u]nless the statute provides for a different standard of proof, at a hearing, the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. section 50-6-239(c) (2014). A different standard of proof exists for the issuance of interlocutory orders at expedited hearings than the standard of proof required at compensation hearings. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015). A workers' compensation judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits. Tenn. Code Ann. 50-6-239(d)(1) (2014); *McCall v. Nat'l Health Care Corp.,* 100 S.W.3d 209, 214 (Tenn. 2003).

*Factual Findings*

The Court finds that Mr. Green suffered an injury on July 24, 2014, while crawling under a house to install plumbing. The Court finds that Mr. Green was performing activities within the course and scope of his employment for Sumpter when the incident occurred. The Court finds that Mr. Green's current symptoms and need for surgery are related to his underlying degenerative chondromalacia.

*Application of Law to Facts*

At this time, the Court must deny Mr. Green's request for surgical treatment because the opinion of the authorized treating physician does not support a causal relationship between the July 24, 2014 injury and his current need for arthroscopic surgery. Accordingly, Mr. Green is unlikely to succeed at a hearing on the merits and cannot recover temporary benefits at this time. *See* Tenn. Code Ann.§ 50-6-239(d)(1) (2014).

Tennessee Code Annotated Section 50-6-102(13) defines an injury as follows:

> "Injury" or "personal injury" mean an injury by accident … arising primarily out of and in the course and scope of employment, that causes …the need for medical treatment of the employee; provided, that:
>
> (A)     An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence[.]

6

Tenn. Code Ann. § 50-6-102(13)(A) (2014). In this case, Mr. Green provided an affidavit stating that his "knee pain flared up after crawling under a house using knee pads on July 24, 2014." (Exh. I). The parties have not disputed that Mr. Green was performing work for Sumpter when crawling under the house.

The statutory definition of "injury" additionally provides: "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014). In this case, Mr. Green provided an affidavit stating that he injured his knee while crawling under a house. (Exh. I).

However, the statute further provides: "An injury causes … ***the need for medical treatment*** only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing … [the] need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C) (2014) (emphasis added). Longstanding Tennessee case law mirrors this requirement. Except in "the most obvious, simple and routine cases," a workers' compensation claimant must establish by expert medical testimony that he or she is injured and that there exists a causal relationship between the injury and the claimant's employment activity. *Wheetley v. State,* No. M2013-01707-WC-R3-WC, 2014 Tenn. LEXIS 476, (Tenn. Workers' Comp. Panel, June 25, 2014) (citing *Excel Polymers, LLC v. Broyles,* 302 S.W.3d 268, 274 (Tenn. 2009)); *Cloyd v. Hartco Flooring Co.,* 274 S.W.3d 638, 643 (Tenn. 2008).

The authorized treating physician's opinion on causation enjoys a presumption of correctness that can be overcome through the presentation of contrary evidence that satisfies a preponderance standard. *See* Tenn. Code Ann. § 50-6-102(13)(E) (2014). Any care prescribed by the physician selected from the panel is presumed to be reasonable and necessary for treatment of the employee's work-related injury. *See Russell v. Genesco, Inc.*, 651 S.W.2d 206, 211 (Tenn. 1983).

Here, Mr. Green seeks a surgical procedure originally recommended by his authorized treating physician. On November 26, 2014, Dr. Smalley opined that although findings suggested underlying chronic chondromalacia, he believed that Mr. Green had symptoms related to the July 24, 2014 injury, which could benefit from the arthroscopic surgery. (Exh. C). Dr. Smalley's opinion, however, has since changed. On February 25, 2015, Dr. Smalley opined that the arthroscopic surgery is indicated to address the underlying chondromalacia rather than the "symptoms related to the acute exacerbation." (Exh. J). He further stated that the underlying chondromalacia contributed more than fifty percent (50%) to Mr. Green's need for arthroscopic surgery. (Exh. J). Accordingly, Mr. Green failed to show that the July 24, 2014 accident contributed more than fifty percent (50%) in his current need for surgery. For that reason, the Court denies his request for medical benefits.

In his affidavits, Mr. Green also indicated a belief that his current need for medical treatment may relate to his January 29, 2013 workplace injury because he continued to suffer pain intermittently in the same area of the body since the 2013 accident occurred. This Court has original and exclusive jurisdiction over worker's compensation claims where the injury occurred on or after July 1, 2014. *See* Tenn. Code Ann. § 50-6-237 (2014). So far as Mr. Green requested medical

benefits under Sumpter's obligation to provide future medical care for the January 29, 2013 injury, if any, this Court lacks subject matter jurisdiction.

Lastly, the Court declines to declare Mr. Green's claim non-compensable at this time. Although he has not presented sufficient proof to carry his burden of proof in this Expedited Hearing, Mr. Green could still prevail at a hearing on the merits if he provides an appropriate medical opinion that rebuts the opinion provided by Dr. Smalley.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Green's request for medical benefits is denied.

2. **This matter is set for Initial Hearing via teleconference on May 12, 2015, at 10:30 a.m. (CDT). The parties must participate in the Initial Hearing by calling (615) 741-2113. Failure to participate in the hearing may result in decisions being made in the case without the input of the non-participating party.**

**ENTERED ON THIS THE 21ST DAY OF APRIL, 2015.**

_____
**Joshua Davis Baker**
**Workers' Compensation Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with Judge Joshua Davis, Court of Workers Compensation Claims. You must call (615) 741-2113 or toll free at (855) 874-0474 to participate in the Initial Hearing. Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 21st day of April 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Mark D. Green | | | | | x | Mdgreen41@gmail.com |
| Catheryne Grant | | | | | x | catherynelgrant@feeneymurray.com |

Penny Patterson-Shrum, Clerk
Tennessee Court of
Workers' Compensation Claims